CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 13 2012

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Action No. 7:08CR00041 |
| ) | Civil Action No. 7:10CV80270 |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| CLIFTON DWIGHT LEE, ) | |
| ) | By: Hon. Glen E. Conrad |
| Defendant. ) | Chief United States District Judge |

Clifton Dwight Lee, a federal inmate, filed this action as a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. The action is presently before the court for review of the report and recommendation of United States Magistrate Judge Pamela Meade Sargent and the defendant's objections to the report. For the following reasons, the report and recommendation will be adopted in part and rejected in part, and the matter will be referred for an evidentiary hearing on the defendant's remaining claims.

## Background

On March 5, 2009, Lee was charged in a 22-count superceding indictment returned by a grand jury in the Western District of Virginia. Count One charged Lee with conspiring to distribute more than 100 grams of a mixture or substance containing heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 846. Counts Six, Eight, Ten, Fourteen, and Eighteen charged Lee with possessing with intent to distribute a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Counts Seven, Nine, Eleven, Fifteen and Nineteen charged Lee with distributing a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Counts Twelve, Sixteen, and Twenty charged Lee with knowingly using or carrying a firearm during and in relation to a drug trafficking

crime, in violation of 18 U.S.C. § 924(c)(1)(A). Counts Thirteen, Seventeen, and Twenty-One charged Lee with knowingly possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Count Twenty-Two charged Lee with knowingly possessing a firearm after having been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Paul Graham Beers, Esq. represented Lee during the criminal proceedings.

On April 21, 2009, the government filed a notice, pursuant to 21 U.S.C. § 851, which advised Lee that it intended to rely on a 2005 felony drug conviction in the Circuit Court for the City of Roanoke as the basis for seeking enhanced penalties for the drug offenses charged in the indictment. Two days later, the defendant entered pleas of guilty to Count One and Amended Count Thirteen of the superceding indictment, pursuant to a written plea agreement.[1]

In the agreement, the parties stipulated, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Civil Procedure, that Lee would receive a "120 month sentence" of imprisonment for Count One and a consecutive "60 month sentence" of imprisonment for Amended Count Thirteen. (Plea Agreement at 1.) The government agreed to dismiss the remaining charges against Lee. In exchange, Lee stipulated that he was subject to enhanced statutory penalties as a result of the prior conviction set forth in the § 851 notice filed by the government. Lee also agreed to completely waive his right of appeal and his collateral-attack rights.

The plea agreement recited the maximum statutory penalties that could be imposed for each offense, including a total fine of up to $4,250,000 and "imprisonment for a term of life, plus

---

[1] The parties moved to amend Count Thirteen of the superceding indictment to charge the defendant with knowingly possessing a firearm in furtherance of the drug trafficking crime set forth in Count One.

supervised release." (Id. at 1-2.) The agreement also advised the defendant that Count One carried "a mandatory minimum sentence of imprisonment for a term of ten years," and that Amended Count Thirteen carried "a mandatory minimum sentence of imprisonment for a term of five years," which must be served consecutively to any other term of imprisonment. (Id.) Lee expressly acknowledged that there was a "possibility [that] substantial fines and/or restitution may be imposed." (Id. at 5.) He also acknowledged that fees may be imposed to pay for supervised release, and that his "supervised release may be revoked [if] he violates his terms and conditions." (Id.) The agreement noted that Lee would have the right to withdraw his pleas of guilty, "should the Court reject the parties' mutual recommendation for a term of imprisonment of 180 months or any other aspect of this Plea Agreement." (Id. at 4.)

During the plea hearing conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the court instructed the prosecutor to summarize the offenses to which Lee was pleading guilty and the penalties applicable to those offenses. In response, the prosecutor stated as follows:

> . . . You stand charged in count 1 with a conspiracy to possess with intent to distribute during the time of that conspiracy over 100 grams of heroin . . . .
>
> If convicted of that count, because of the information that the Government filed in this case on the 21st day of May [sic] of this year . . . [y]ou would be facing a maximum of life imprisonment and a minimum mandatory period of incarceration of ten years. There could also be a fine of up to $4 million, a $100 special assessment and any period of incarceration would be followed by a period of supervised release.
>
> . . . .
>
> The second charge that you propose to plead guilty to is a count contained in the amended count 13 of the indictment. That states that as part of this conspiracy or in furtherance of this conspiracy, that you did possess at some time during that conspiracy a firearm in furtherance of the end of that conspiracy.

3

. . . .

> . . . [I]f you are convicted of that charge, that, too, carries a maximum of life imprisonment and a minimum mandatory of five years, which has to run consecutive with any term of incarceration on the drug charge.
>
> . . . .
>
> The penalty, the fines that could be imposed could be a fine of up to $250,000 with $100 special assessment. Any period of incarceration would be followed by a term of supervised release.

(Plea Hearing Tr. at 10-12).

The prosecutor then summarized the agreement that Lee had reached with the government under Rule 11(c)(1)(C). When asked if it was Lee's "understanding that this plea agreement calls for a term of incarceration of 180 months," consisting of "120 months on the drug[] [charge] and 60 months or 5 years on the firearms charge," Lee responded in the affirmative. (Id. at 13.) Likewise, when questioned by the court, Lee confirmed that "what [the prosecutor] said about [the] plea agreement [was] consistent with [his] understanding of [his] bargain with the United States." (Id. at 17.)

The court later turned its attention to supervised release, emphasizing that, "in addition to any period of incarceration imposed, the court will also impose a period of supervised release that follows." (Id. at 26.) Lee confirmed that he and his attorney had received "an opportunity to talk about supervised release, how it works and what it would mean for [Lee]." (Id.) Lee also confirmed that he was aware of the consequences of violating his conditions of supervised release:

> The Court: [T]he key consideration for today's purposes, is if you violate a condition of supervised release, you may be brought back into court and resentenced regardless of how much time you may have served before the violation.

4

> If resentenced following a supervised release violation, you may actually serve a combined total period o[f] incarceration greater than the maximum term you had been told you would receive at the time of sentencing.
>
> Do you understand that?

The Witness: Yes, sir.

The Court: This would be despite any favorable treatment that might otherwise be afforded to you as a result of an agreement made and accepted under Rule 11(c)(1)(C) of the Federal rules.

> Do you understand that?

The Witness: Yes.

The Court: Do you need to talk to Mr. Beers about this?

The Witness: No.

(Tr. at 26-27).

At the conclusion of the hearing, the court specifically inquired as to whether Lee had any questions about his case or any aspects of the hearing. Lee indicated that he did not have any questions for the court. (Tr. at 53.) He subsequently entered pleas of guilty to Counts One and Amended Count Thirteen of the superceding indictment. The court accepted his pleas and adjudged him guilty of both offenses, and the case was referred to the United States Probation Office for the preparation of a presentence report.

In the presentence report, which was prepared on June 19, 2009, the probation officer outlined the applicable minimum and maximum statutory penalties to which Lee was subject. In addition to those discussed during the Rule 11 hearing, the probation officer noted that Lee was

subject to a mandatory minimum term of supervised release of eight years for his drug conviction under 21 U.S.C. § 841(b)(1)(B).[2]

The court conducted Lee's sentencing hearing on July 31, 2009. Prior to the hearing, the government filed a substantial assistance motion under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. After considering the arguments of counsel, the court granted the government's motion and advised Lee that it planned to impose a term of incarceration of 132 months, to be followed by the mandatory minimum term of supervised release of eight years. The court also stated that it intended to impose a fine of $1,000.00 and a special assessment of $200.00. Neither the government nor the defendant challenged the legality or propriety of the proposed sentencing terms. Consequently, the court advised Lee that "that [would] be the sentence structure," and that the court would include those terms in his final judgment and commitment order. (Sentencing Tr. at 19.) Lee did not appeal his convictions or sentence.

Lee filed the instant § 2255 motion on July 13, 2010. In the original motion, Lee raised three related grounds of collateral attack: (1) that the court breached the plea agreement by imposing a term of supervised release and a fine, since the agreement "was silent on [those] matter[s]" (Mem. in Supp. of Mot. at 1); (2) that his attorney was ineffective in failing to object to the alleged breach; and (3) that the government engaged in prosecutorial misconduct by failing to direct the court's attention to the terms of the plea agreement.

---

[2] The eight-year mandatory minimum term of supervised release resulted from the prior felony drug conviction set forth in the government's § 851 notice. See 21 U.S.C. § 841(b)(1)(B).

On July 29, 2010, Lee moved to amend his § 2255 motion. In addition to providing additional support for his original claims, Lee also asserted that counsel was ineffective in failing to file a direct appeal. On August 6, 2010, the court granted the motion to amend.

The government subsequently moved to dismiss Lee's § 2255 motion on the basis that his claims were barred by the waiver of collateral-attack rights contained in the plea agreement. On December 30, 2010, the government's motion was denied in part and taken under advisement in part, and the court ordered an evidentiary hearing on Lee's claim that his attorney was ineffective in failing to file a direct appeal. The matter was eventually referred to Judge Sargent, pursuant to 28 U.S.C. § 636(b)(1)(B), for the conduct of the hearing and for a recommended disposition of the defendant's motion. Onzlee Ware, Esq. was appointed to represent Lee during the evidentiary hearing.

Following his appointment, Ware filed a motion for leave to amend Lee's § 2255 motion to include the following additional claims: (1) that the court violated Rule 11(b)(1)(I)[3] of the Federal Rules of Criminal Procedure by failing to advise Lee, during the guilty plea hearing, that he was subject to a mandatory minimum term of supervised release of eight years as a result of his prior drug conviction; and (2) that Beers was ineffective in failing to object to, or correct, the court's error.

Judge Sargent conducted an evidentiary hearing on August 4, 2011, during which Lee and Beers were called as witnesses. Thereafter, Judge Sargent issued a report and recommendation, which includes the following proposed findings of fact and conclusions of law:

---

[3] Rule 11(b)(1)(I) provides that, before the court accepts a plea of guilty, "the court must inform the defendant of, and determine that the defendant understands . . . any mandatory minimum penalty." Fed. R. Crim. P. 11(b)(1)(I).

7

1. The defendant, Clifton Dwight Lee, did not instruct his counsel, Paul G. Beers, to file an appeal of his sentence;

2. Beers was not ineffective in failing to file a direct appeal of Lee's sentence;

3. The court adequately advised Lee as to the statutory maximum and mandatory minimum penalties that it could impose prior to accepting his plea;

4. Lee's waiver of his right to collaterally attack his conviction and sentence was knowing, intelligent and voluntary; and

5. In his plea agreement, Lee waived his right to collaterally attack his conviction and sentence.

(Report and Recommendation at 14.) Based on these proposed findings, Judge Sargent recommended that the court grant Lee's motion to amend, grant the government's motion to dismiss, and dismiss Lee's § 2255 motion based on waiver. Lee subsequently filed a number of objections to the magistrate judge's report.

On January 9, 2012, the court granted Lee's motion to amend his § 2255 motion and directed the government to file a response to the merits of the additional claims asserted in the motion to amend. The government subsequently filed a response to which Lee submitted a pro se reply brief.[4]

## Standard of Review

The magistrate judge makes only a recommendation to this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The magistrate judge's report has no presumptive weight, and the responsibility to make a final determination remains with this court. Id. at 270-271. The court is charged with making a de novo determination of those portions of the report and recommendation to which specific objections are made. 28 U.S.C. § 636(b)(1). The court "may accept, reject, or

---

[4] Ware has withdrawn from the case and Mark Wayne Claytor, Esq. has been appointed to represent Lee.

modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. The court may also receive further evidence or recommit the matter with instructions. Id.

## Discussion

I. **Failure to File an Appeal**

The court will first address the defendant's claim that he was denied effective assistance when his trial counsel failed to file a direct appeal. To prevail on a claim of ineffective assistance of counsel, the defendant bears the burden of showing: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). If the defendant makes an insufficient showing on one component, the court is not required to address the other component. Id. at 697.

When evaluating an ineffective assistance claim that is based upon counsel's failure to file an appeal, this court is guided by the United States Supreme Court's decision in Roe v. Flores-Ortega, 528 U.S. 470 (2000). In Flores-Ortega, the Supreme Court held that the Strickland test applies to claims that counsel was ineffective for failing to file a notice of appeal. Id. at 477. In evaluating such claims, the Supreme Court held that when a defendant asks that an appeal be filed, and the attorney does not file one, the attorney's conduct is per se ineffective. Id.; see also United States v. Poindexter, 492 F.3d 263, 265 (4th Cir. 2007) (holding that "an attorney renders constitutionally ineffective assistance of counsel if he fails to follow his client's unequivocal instruction to file a timely notice of appeal even though the defendant may have waived his right to challenge his conviction and sentence in [a] plea agreement").

9

Having reviewed the record from the evidentiary hearing,[5] the court adopts the magistrate judge's finding that Lee did not instruct Beers to file a notice of appeal. Beers testified that he has represented clients in criminal matters in federal court since 1992, and that he has taken many appeals to the United States Court of Appeals for the Fourth Circuit. Beers also testified that he is familiar with the duties applicable to a defendant's right of appeal, and that it would be per se ineffective for an attorney to not note an appeal if requested to do so by his client. More importantly, Beers unequivocally testified that, in this particular case, Lee never instructed him to file an appeal, either in person, by telephone, or in writing. Likewise, after extensive questioning, Lee acknowledged that he never specifically asked Beers to file an appeal on his behalf. Lee instead asserted that he was never given the opportunity to do so. Based on the testimony presented at the evidentiary hearing, the court finds that Lee did not ask Beers to file an appeal and, thus, that the fact that Beers did not file an appeal was not per se ineffective. See Flores-Ortega, 528 U.S. at 478.

Having determined that Lee did not explicitly instruct Beers to file a direct appeal, the court must determine whether Beers consulted with Lee about his appellate rights.[6] In Flores-Ortega, the Supreme Court addressed whether counsel performs deficiently by not filing a notice of appeal in an "[in] between case," where a defendant "has not clearly conveyed his wishes one way or another." Id. at 477. The Court ultimately ruled as follows:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has

---

[5] The court has reviewed the rough transcript from the hearing, as well as the exhibits that were introduced into evidence.

[6] In this particular context, the term "consult" has a specific meaning: "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Flores-Ortega, 528 U.S. at 478.

10

performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal . . . . If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

Id. at 478.

Counsel is not always required to consult with a defendant regarding an appeal. A constitutional duty to consult exists only where there is reason to believe that a rational defendant would want to appeal or the defendant reasonably demonstrates to counsel that he is interested in appealing. Id. at 480. In determining whether counsel had a constitutional duty to consult, the Supreme Court instructed courts to consider "all relevant factors," including whether the conviction follows a trial or a guilty plea. Id. In cases where the defendant entered a plea of guilty, courts "must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." Id.

In this case, whether or not Beers was constitutionally required to do so, the court finds that Beers did consult with Lee about an appeal. Lee's plea agreement contained a complete waiver of his appellate rights. During the Rule 11 hearing, Lee testified that he discussed this provision with his attorney, and that he intended to waive his right to appeal to a higher court. During the evidentiary hearing, the prosecutor specifically asked Beers whether he had the opportunity to speak to Lee, following the sentencing hearing, regarding the possibility or advisability of an appeal. Beers testified that he had a brief discussion with Lee, during which he confirmed that Lee did not want to file an appeal. Beers testified that this decision was consistent with Lee's plea agreement and his

11

colloquy with the court during the Rule 11 hearing, during which Lee verified that he wanted to waive his right to appeal. Beers further testified that, on August 3, 2009, he sent Lee a letter confirming their discussion regarding an appeal. That letter stated, in pertinent part, as follows: "Because you have not asked me to appeal the Judgment in a Criminal Case (and no reasonable basis for an appeal exists), I am closing my file on this matter."

Beers also disputed Lee's claim that he unsuccessfully attempted to contact Beers on multiple occasions following the sentencing hearing. Beers noted that Lee had his direct office telephone number and that Lee had no difficulty contacting him on multiple occasions during the pendency of the criminal proceedings. Beers testified that he received only one telephone message from Lee after he sent the August 3, 2009 letter, and that the message did not indicate that Lee wanted Beers to file an appeal.

Having reviewed the record from the evidentiary hearing, the court credits Beers' testimony and finds that Beers consulted with Lee about his appellate rights and that Lee never asked Beers to file a notice of appeal. Accordingly, the court concludes that Beers did not perform deficiently by failing to file an appeal and that this claim must be dismissed.[7]

## II. Alleged Breach of the Plea Agreement

Lee's next set of claims is based on the assertion that the court breached the plea agreement by imposing a fine and a term of supervised release. Lee contends that he and the government agreed that he would only be sentenced to a term of imprisonment, and that neither a fine nor a term of supervised release was part of the agreement that he reached with the government under Rule

---

[7] Because Lee failed to make a sufficient showing on the performance prong of the Strickland analysis, it is not necessary for the court to address the prejudice component. Strickland, 466 U.S. at 697.

11(c)(1)(C). The magistrate judge addressed the merits of this claim in the body of her report, finding that "the language of the plea agreement, itself, defeats [Lee's] argument." (Report and Recommendation at 13.) Having reviewed the record, the court agrees with the magistrate judge and concludes that this set of claims must also be dismissed.

When parties dispute the interpretation of language in a plea agreement, a reviewing court applies basic contract principles. See United States v. Lewis, 633 F.3d 262, 269 (4th Cir. 2011). If a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration [to plead guilty], such promise must be fulfilled." Id. In analyzing a plea agreement, the court must hold "the government . . . to a greater degree of responsibility than the defendant . . . for imprecisions or ambiguities" in the agreement. Id. (internal quotation marks omitted). "The government is only bound, however, by the promises that were actually made in inducing a guilty plea." Id.

Applying these standards, the court concludes that Lee received the benefit of his bargain under Rule 11(c)(1)(C) and that the court did not breach the plea agreement by imposing a fine and a term of supervised release. As set forth in the plea agreement, Lee was subject to a mandatory minimum sentence of imprisonment of 120 months for the drug offense charged in Count One of the indictment, and a mandatory minimum sentence of imprisonment of 60 months for the firearm offense charged in Amended Count Thirteen, which must be served consecutively. Lee and the government agreed, pursuant to Rule 11(c)(1)(C), that Lee would receive the mandatory minimum terms, resulting in a total term of imprisonment of 180 months.

Although the second paragraph of the plea agreement states that the parties stipulated to a "180 month sentence," a plain reading of the entire document establishes that the parties agreed to

limit Lee's term of imprisonment to 180 months, and that other penalties, such as a fine and an appropriate term of supervised release, would be determined by the court. By signing the plea agreement, Lee specifically acknowledged that there was "a possibility substantial fines . . . may be imposed." (Plea Ag. at 5.) Lee also acknowledged that "fees may be imposed to pay for . . . supervised release," that "[his] supervised release may be revoked if [he] violate[s] its terms and conditions," and that "a violation of supervised release increases the possible period of incarceration." (Id. at 2.) Finally, and perhaps most importantly, Lee expressed his understanding that "the determination of what sentence should be imposed, within the confines of any applicable statutory minimums and maximums, is in the sole discretion of the Court," and that he would only have the right to withdraw his plea of guilty if "the Court reject[s] the parties' mutual recommendation for a term of imprisonment of 180 months." (Plea Ag. at 3-4) (emphasis added).

To the extent Lee now contends that he was of the belief that the 180-month term agreed upon by the parties included supervised release, this argument is belied by his sworn statements during the Rule 11 hearing. As set forth above, Lee expressly confirmed that the plea agreement called for a "term of incarceration of 180 months." (Plea Hearing Tr. at 13.) Lee also confirmed that he and Beers discussed supervised release, that he understood that a period of supervised release would follow any period of incarceration imposed, that he could potentially serve a longer period of incarceration if resentenced following a supervised release violation, and that all of this would be "despite any favorable treatment that might otherwise be afforded . . . as a result of an agreement made and accepted under Rule 11(c)(1)(C)." (Id. at 26.)

For all of these reasons, it is apparent that Lee received the benefit of the bargain that he reached with the government under Rule 11(c)(1)(C), and that the court did not breach the plea

agreement by imposing a fine and a term of supervised release. Accordingly, this set of claims must also be dismissed.[8]

### III. Rule 11 Error

Lee's final set of claims was raised in the motion to amend that was filed by his court-appointed counsel prior to the evidentiary hearing. In the motion to amend, Lee asserted that the court violated Rule 11(b)(1)(I) by failing to advise Lee, during the guilty plea hearing, that he was subject to a mandatory minimum term of supervised release of eight years under 21 U.S.C. § 841(b)(1)(B). Lee also asserted that Beers was ineffective in failing to object to, or correct, this error.

In her report and recommendation, Judge Sargent found that "this claim is simply not true," and that the court "adequately advised Lee as to the statutory maximum and mandatory penalties that it could impose prior to accepting his plea." (Report and Recommendation at 14.) Having carefully reviewed the record, however, the court is unable to adopt these findings. The transcript of the Rule 11 hearing reveals that while supervised release was discussed during the Rule 11 hearing, Lee was not advised that he would be subject to a mandatory minimum term of supervised release of eight years. Likewise, the plea agreement indicated only that the defendant would be subject to "a term of supervised release," not that the defendant would be subject to a mandatory minimum eight-year term. (Plea Ag. at 1.) Accordingly, the defendant is correct that he was not advised of all mandatory minimum penalties, as required by Rule 11(b)(1)(I).

---

[8] Having concluded that the plea agreement was not breached, it follows that Lee's related claims of ineffective assistance and prosecutorial misconduct also fail.

15

Upon reviewing the transcript from the Rule 11 hearing, the court directed the government to file a response to the merits of Lee's claims that the court violated Rule 11(b)(1)(I) and that his trial attorney was ineffective in failing to object to, or otherwise address, the violation. In its response, the government argues that the claim of Rule 11 error fails for two reasons: (1) the claim is procedurally defaulted; and (2) "the court's minor admission did not affect the petitioner's substantial rights." (Docket No. 442 at 1.) The response does not address Lee's claim of ineffective assistance.

Because Lee did not raise his objection to the sufficiency of the court's Rule 11 colloquy at sentencing, the court agrees with the government that the substantive claim may be reviewed on its merits only if Lee can establish cause and prejudice or actual innocence to excuse his procedural default. United States v. Frady, 456 U.S. 152, 167-168 (1982); see also United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994) (holding that the "Frady cause and prejudice standard applies to . . . collateral challenges to unappealed guilty pleas"); King v. United States, 214 F. Supp. 2d 669, 672 (E.D. Va. 2002) (holding that the defendant had to establish cause and prejudice or actual innocence to excuse the procedural default of his claim of Rule 11 error).

It is well-settled that ineffective assistance of counsel can provide cause for a procedural default. See, e.g., United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999) ("The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel."). In this case, Lee specifically claims that Beers was ineffective in failing to object to the Rule 11 violation, which caused Lee to plead guilty "without open eyes." (7/15/2011 Mot. to Am. at 1.)

As set forth above, to establish ineffective assistance of counsel, the defendant must prove both deficient performance and prejudice. Strickland, 466 U.S. at 687. To prove deficient performance, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In the context of a guilty plea, a defendant can show prejudice only by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Having reviewed the record and applicable case law, the court is of the opinion that Lee's claim of ineffective assistance cannot be resolved without the benefit of another evidentiary hearing. The government has yet to respond to the merits of this claim, and neither Lee nor Beers was called upon to address the applicable issues during the previous hearing. Accordingly, the matter will be referred for an evidentiary hearing on Lee's claim that Beers was ineffective in failing to object to the court's violation of Rule 11(b)(1)(I).[9]

## Conclusion

For the foregoing reasons, the report and recommendation will be adopted in part and rejected in part. The court will dismiss the defendant's claim that counsel was ineffective in failing to file an appeal. The court will also dismiss the defendant's claims pertaining to the alleged breach

---

[9] The court notes that because the remaining claims challenge the validity of his guilty plea, they are not barred by the waiver of collateral-attack rights contained in the plea agreement. See United States v. Aparicio, No. 5:08CR0005, 2010 U.S. Dist. LEXIS 112169, at *13 (W.D. Va. Oct. 10, 2010) (holding that the defendant's "waiver of his right to collaterally attack his conviction and sentence did not waive his right to collaterally attack the validity of his guilty plea") (citing cases).

of the plea agreement. The case will be referred to the Honorable Robert S. Ballou, United States Magistrate Judge for the Western District of Virginia, for an evidentiary hearing on the defendant's claim that counsel was ineffective in failing to object to the court's violation of Rule 11(b)(1)(I). The magistrate judge shall submit a report setting forth appropriate findings of fact, conclusions of law, and a recommended disposition of the remaining claims, pursuant to 28 U.S.C. § 636(b)(1)(B).

The Clerk is directed to send a certified copy of this memorandum opinion and the accompanying order to the defendant, all counsel of record, and Judge Ballou.

ENTER: This 13th day of August, 2012.

_____
Chief United States District Judge